## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### ALEXANDRIA DIVISION

**BRITANIA URIOSTEGUI RIOS**            **CIVIL ACTION NO. 25-1320 SEC P**

**VERSUS**                              **JUDGE EDWARDS**

**DONALD J TRUMP ET AL**                **MAGISTRATE JUDGE PEREZ-MONTES**

## MEMORANDUM RULING AND ORDER

Before the Court is a Verified Petition for Writ of Habeas Corpus ("Petition") (R. Doc. 1) and a Motion for Temporary Restraining Order ("Motion") (R. Doc. 20) filed by habeas petitioner in this case, Britania Uriostegui Rios ("Petitioner"). Respondents (sometimes the "Government") oppose the Petition and Motion (R. Docs. 13 and 26). Petitioner replied (R. Docs. 16 and 27).

After carefully considering the applicable law and the parties' memoranda, the Habeas Petition (R. Doc. 1) is **GRANTED IN PART** and **DENIED IN PART**, and the Motion for Temporary Restraining Order (R. Doc. 20) is **DENIED AS MOOT**.

### BACKGROUND[1]

Petitioner, a transgender woman and citizen of Mexico, entered the United States at an unknown location on or about March 24, 2003.[2] Petitioner enjoyed lawful permanent resident status from 2012 until 2023, when that status was terminated after Petitioner pled guilty to assault with a deadly weapon on September 11, 2023.[3]

---

[1] The facts below were taken from Petitioner's Petition and Motion as well as the Government's Response.

[2] R. Doc. 13-1 at 2.

[3] *See* R. Doc. 1 at 9; *see also* R. Doc. 20-1 at 7.

On April 16, 2024, Petitioner was detained by Immigration and Customs Enforcement ("ICE") officials and placed in removal proceedings.[4] Petitioner was charged with removability under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act as an alien convicted of an aggravated felony.[5] On May 29, 2024, Petitioner was transferred to the transgender unit at the Denver Contract Detention Facility in Aurora, Colorado.[6] She has diagnoses of Gender Dysphoria, Complex-Post-Traumatic Stress Disorder ("PTSD"), and Major Depressive Disorder ("MDD").[7] She has been taking gender-affirming hormones for nine years and has had several gender affirming surgeries.[8] She was declared incompetent by an immigration judge on August 20, 2024, as a result of her PTSD and MDD diagnoses.[9]

On March 14, 2025, an immigration court ordered Petitioner to be removed to Mexico but simultaneously ordered deferral of removal under the protection of the Convention Against Torture ("CAT").[10] Both parties waived appeal and the order of removal became administratively final.[11] On March 20, 2025, ICE informed Petitioner that she would continue to be detained while the Government pursued her removal to a third country.[12]

---

[4] *See* R. Doc. 1 at 9.
[5] *See* R. Doc. 13-1 at 2; *see also* 8 U.S.C §1227(a)(2)(A)(iii).
[6] *See* R. Doc. 1 at 10.
[7] *See* R. Doc. 1-2 at 5.
[8] *See id.*
[9] *See* R. Doc. 1 at 10; *see also* R. Doc. 20-1 at 2.
[10] *See* R. Doc. 1 at 2.
[11] *See* R. Doc. 13-1 at 3.
[12] *See* R. Doc. 1 at 10.

On May 11, 2025, the Government sent a "[r]equest for acceptance of Alien" to Costa Rica, Nicaragua, and Honduras.[13] Petitioner contends that the Government has also submitted requests for acceptance to Panama and Guatemala—which the Government claims is inaccurate.[14]  On May 12, 2025, Honduras declined to accept Petitioner.[15] On May 13, 2025, Costa Rica declined to accept Petitioner.[16] Nicaragua has not provided a response.[17] On June 4, 2025, ICE served Petitioner with a "Decision to Continue Detention" notifying her that ICE would maintain custody over Petitioner because she continued to pose a significant risk of flight pending her removal from the United States and posed a danger to the community, to the safety of other persons, or to property.[18] Petitioner was transferred to a soft-sided men's detention facility in El Paso, Texas, on June 14, 2025, and again on June 19, 2025, to Winn Correctional Center in Winnfield, Louisiana, a male-only facility.[19] On August 4, 2025, Petitioner was served with a notice of removal to El Salvador.[20]

On September 8, 2025, Petitioner filed the instant Petition seeking, *inter alia*, her immediate release on the grounds that her removal was not reasonably foreseeable, or alternatively, an opportunity to assert protection claims pertaining to any third country designated for her removal.[21] Petitioner also asserts that she is entitled to release because the Government has violated her rights under the

---

[13] *See* R. Doc. 13-1 at 3.
[14] *See* R. Doc. 13 at 12; *see also* R. Doc. 16 at 5.
[15] *See* R. Doc. 13-1 at 3.
[16] *See id.*
[17] *See id.*
[18] *See* R. Doc. 13-2 at 1.
[19] *See* R. Doc. 1 at 10; *see also* R. Doc. 20-1 at 9; *see also* R. Doc. 20-3 at 3.
[20] *See* R. Doc. 13-1 at 3.
[21] *See* R. Doc. 1 at 32.

Rehabilitation Act, 29 U.S.C. § 794, by denying her gender-affirming care, housing her in an all-male unit, and denying her reasonable accommodations and services for her PTSD and MDD diagnoses.[22] The Government responded to the Petition on October 30, 2025, asserting that the continued detention of Petitioner is lawful due to Petitioner's criminal history, her impending removal, and Petitioner's inability to demonstrate that she is not a flight risk or danger to the community.[23] Further, the Government contends that the Rehabilitation Act does not apply to a deportable alien in custody pending removal or to Petitioner's claims of PTSD and MDD because they are intertwined with gender dysmorphia, which is not a covered disability under the Act.[24]

On November 12, 2025, while this matter was under consideration by the Court, the Government removed Petitioner to Mexico without notice and in contravention of the order deferring her removal to Mexico under the protection of the Convention Against Torture.[25] The Government, recognizing the removal as "inadvertent," coordinated with Petitioner's counsel to allow Petitioner to reenter the United States on November 19, 2025, at the Tijuana port of entry.[26] Once back in the United States, Petitioner was returned to Winn Correctional Center in Winnfield, Louisiana. Petitioner filed the instant Motion on November 20, 2025, seeking immediate release on the grounds that her removal is not reasonably foreseeable, or

---

[22] *See id.* at 22–23.
[23] *See* R. Doc. 13 at 9–10.
[24] *See id.* at 23.
[25] *See* R. Doc. 20-3 at 3; *see generally* R. Doc. 20-4.
[26] *See* R. Doc. 20-1 at 8–9; *see generally* R. Doc. 20-4.

alternatively, that she be given an individualized custody determination.[27] In response to this Motion, the Government has confirmed that El Salvador declined to accept Petitioner on December 10, 2025, but asserts that ICE "continues to explore options for removal to an alternate third country."[28]

## LAW AND ANALYSIS

### *Likelihood of Removal*

Petitioner is detained pursuant to 8 U.S.C. § 1231(a)(6) as she is an alien subject to a final order of removal.[29] Section 1231(a)(6) provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

Section 1227(a)(2)(iii) provides that any alien who is convicted of an aggravated felony shall be removed.[30] "The term 'aggravated felony' includes ... a crime of violence for which the term of imprisonment is at least one year."[31] Here, it is undisputed that Petitioner pled guilty to assault with a deadly weapon, receiving a suspended sentence of 18–60 months and probation not to exceed 36 months.[32] It is also undisputed that Petitioner is removable under § 1227(a)(2)(A)(iii) and that both parties waived the appeal of Petitioner's order of removal.[33] Further, it is also

---

[27] *See* R. Doc. 20 at 2.
[28] *See* R. Doc. 26 at 5.
[29] *See* R. Doc. 1 at 3; *see also* R. Doc. 13 at 7.
[30] 8 U.S.C. § 1227(a)(2)(iii).
[31] 8 U.S.C. § 1101(a)(43)(F).
[32] *See* R. Doc. 1 at 2, 9; *see also* R. Doc. 13-1 at 1–2.
[33] *See* R. Doc. 13-1 at 3.

undisputed that ICE officials determined that Petitioner posed a significant risk of flight and a danger to the community.[34] Thus, Petitioner falls squarely within § 1231(a)(6) and its detention provisions, permitting the Government to detain her beyond the "removal period" of ninety-days after the removal order becomes administratively final.[35]

It is presumptively constitutional for an alien to be detained six months past the removal period following a final order of removal.[36] But not every alien in custody will be entitled to release after the six-month period expires. In fact, the Fifth Circuit has reiterated that *Zadvydas* creates no specific limits on detention as aliens may be detained until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.[37]

Thus, release after six months of detention is not the rule, nor has it been.[38] Rather, a test applies:

> After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.[39]

---

[34] *See* R. Doc. 13-2 at 1.

[35] *See* § 1231(a)(6).

[36] *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).

[37] *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006) (citing *Zadvydas*, 533 U.S. at 701 (2001)).

[38] This Court and others have found that periods of detention longer than six months were not unreasonable. *See M.P. v. Joyce*, No. 1:22-CV-06123, 2023 WL 5521155, at *4 (W.D. La. Aug. 10, 2023) (collecting cases).

[39] *Zadvydas*, 533 U.S. at 701 (2001).

This is a close case, and the positions of both sides on the foreseeability of removal are well taken. Petitioner, a transgender woman under CAT protection prohibiting her removal to Mexico, has been rejected by at least three countries: Costa Rica, Honduras, and El Salvador. Nicaragua has not responded in more than seven months. Petitioner contends that she has been rejected by Panama and Guatemala, but the Government contends that no requests have been made to these countries. The continuing rejection of Petitioner by multiple countries lends support for the belief that there is no significant likelihood of removal in the reasonably foreseeable future. However—and importantly—the last rejection was made less than thirty days ago by El Salvador. The recency of this rejection, and the Government's assertion that ICE "continues to explore options for removal to an alternate third country,"[40] sufficiently rebuts Petitioner's argument that her removal is not likely in the reasonably foreseeable future. That is, for now.

At this time, Petitioner's confinement is not unlawful under *Zadvydas* considering the statutory authority permitting Petitioner's detention beyond the removal period and the Government's repeated and recent efforts to effect Petitioner's removal to a third country.

### Rehabilitation Act

Petitioner also asserts that the Court should grant immediate release because Respondents are violating the Rehabilitation Act with respect to her disabilities.[41]

---

[40] *See* R. Doc. 26 at 5.
[41] *See* R. Doc. 1 at 31.

But habeas relief is not available to review questions unrelated to the cause of detention.[42] "Fifth Circuit precedent provides that unconstitutional conditions of confinement—even conditions that create a risk of serious physical injury, illness, or death—do not warrant release."[43] "Rather, the proper remedy for unconstitutional conditions of confinement should be equitable—to enjoin the unlawful practices that make the conditions intolerable."[44] "A demand for release does not convert a conditions-of-confinement claim into a proper habeas request."[45] Thus, Petitioner's habeas claim under the Rehabilitation Act fails.

### Alternative Relief

The Government's removal of Petitioner to Mexico, despite her CAT protection, entitles Petitioner to her requested alternative relief. The Government's failure to follow its own CAT procedures leads this Court to the conclusion that additional safeguards are necessary to ensure that Petitioner's rights by virtue of CAT are given effect. Accordingly, the Court will order the Government to provide Petitioner with fifteen days advance notice before her removal to any potential third country.

---

[42] *See Rice v. Gonzalez*, 985 F.3d 1069, 1070 (5th Cir. 2021), *cert. denied*, 142 S.Ct. 216 (2021).

[43] *Cureno Hernandez v. Mora*, 467 F.Supp.3d 454, 460 (N.D. Tex. Jun. 15, 2020) (citing *Spencer v. Bragg*, 310 F. App'x 678, 679 (5th Cir. 2009) and *Carson v. Johnson*, 112 F.3d 818, 820–21 (5th Cir. 1997)); *Nogales v. Dep't of Homeland Sec.*, 524 F.Supp.3d 538, 543 (N.D. Tex. Mar. 3, 2021), *aff'd*, 21-10236, 2022 WL 851738 (5th Cir. 2022).

[44] *See id.* (citing *Cook v. Hanberry*, 596 F.2d 658, 660 (5th Cir. 1979)).

[45] *Id.* (citing *Springer v. Underwood*, No. 3:19-CV-1433, 2019 WL 3307220, at *2 (N.D. Tex. 2019), *report and recommendation adopted*, 2019 WL 3306130); *Vetcher v. Sessions*, 3:18-CV-1724, 2018 WL 4006813, at *2 (N.D. Tex. 2018) ("[A] petitioner may not challenge the conditions of confinement through a habeas action.") (citing *Ruiz v. Davis*, 850 F.3d 225, 229 (5th Cir. 2017)).

## CONCLUSION

Considering the foregoing,

**IT IS ORDERED** that Petitioner's Habeas Petition (R. Doc. 1) is hereby **GRANTED IN PART** and **DENIED IN PART**. The Petition is **GRANTED** to the extent that the Government must provide Petitioner with fifteen days advance notice before her removal to any potential third country. The Petition is **DENIED** to the extent it seeks Petitioner's immediate release.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Temporary Restraining Order (R. Doc. 20) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Clerk is directed to close this case.

**THUS DONE AND SIGNED** in Chambers this 7th day of January, 2026.

_____
**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**